UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X
UNITED STATES OF AMERICA

       -against-

RICKY HAMMONS

       Defendant.

--------------------------------X

<u>MEMORANDUM AND ORDER</u>

Criminal Action No.
CR-05-280 (DGT)

Trager, J:

    Defendant Ricky Hammons has been charged with being a felon-in-possession of a firearm.  The government has notified him of its intention to seek a sentencing enhancement under the Armed Career Criminal Act ("ACCA").  18 U.S.C. §§ 922(g)(1), 924(e).  Hammons challenges whether his previous state felony convictions qualify as predicate convictions under ACCA, because under state law, these felonies no longer have the mandatory maximum sentence of ten or more years.  Hammons and the government have consented to have this issue decided prior to trial.

**(1)**

**Background**

    Hammons was arrested on March 5, 2005 by his parol officers for the charge of being a felon-in-possession of a firearm.  At the time of his arrest, Hammons had four previous convictions,

one federal conviction[1] and three state convictions.  The
government has identified the three state convictions as
predicate convictions for an increased sentence under ACCA.  18
U.S.C. § 924(e).

In order to be sentenced under ACCA, a defendant must have
been previously convicted of three "serious drug offenses."  Id.
The statute defines a state "serious drug offense" as:

> an offense under State law, involving
> manufacturing, distributing, or possessing
> with intent to manufacture or distribute, a
> controlled substance (as defined in section
> 102 of the Controlled Substances Act (21
> U.S.C. 802)), <u>for which a maximum term of
> imprisonment of ten years or more is
> prescribed by law</u>[.]

18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).

Hammons pled guilty to three separate state court crimes on
April 5, 1994, for which he was arrested in 1993.[2]  The
convictions were for the Class C New York felony of attempted
criminal possession of a controlled substance with intent to sell
in the third degree.  N.Y. Penal Law § 220.16(1).  At the time of
his conviction, the maximum sentence for these crimes was 15

---

[1] It is undisputed that Hammons's previous federal
conviction for conspiracy to distribute cocaine base and for
carrying a firearm in relation to drug trafficking qualifies as
one of the three predicate crimes under ACCA.  21 U.S.C. §§ 846,
841 (b)(1)(A); 18 U.S.C. § 924 (c)(1).  He pled guilty to these
crimes on March 2, 2000.

[2]  Hammons's federal record does not indicate the date when
he committed these crimes.

years (N.Y. Penal Law § 70.00(2)), a sentence sufficient to
qualify under ACCA, which requires at least a 10-year maximum
sentence.  18 U.S.C. § 924(e)(2)(A)(ii).

The current maximum sentence for the same Class C New York
felony no longer has the requisite maximum sentence under ACCA.
In 2004, after a great deal of public debate, New York amended
the so-called "Rockefeller drug laws," lowering the sentence for
these crimes to a maximum of five and one-half years.  N.Y. Penal
Law § 70.70; 2004 N.Y. Laws Ch. 738 (effective January 13, 2005)
(hereinafter "Rockefeller Reform Act").  Therefore, as of March
5, 2005, the time of Hammons' arrest for the instant crime, the
maximum term for his previous convictions was five and one-half
years.

The parties dispute what date should be used to calculate
the maximum sentence for the state law felonies.  Three options
are possible: (1) the law applicable at the time of the actual
state law conviction; (2) the law applicable at the time of the
new alleged federal crime; or (3) the law applicable at the time
of the sentencing for the federal offense.[3]  Hammons urges that
the statute applicable on the date of the new alleged federal
crime should be used to determine the maximum sentence for the

---

[3]  Despite the fact that under the defendant's theory he
would be successful if this date were employed, he has apparently
decided not to rely on it so as to not prejudice his argument
that the state convictions have to be found by a jury if they are
to be used as sentencing enhancing factors.  See infra p. 10.

predicate state conviction.  The government argues that the
Rockefeller Reform Act is not retroactive and, therefore, if he
were sentenced today for the 1994 convictions he would still be
eligible for a qualifying maximum sentence.

**(2)**

Hammons is not subject to a sentencing enhancement under
ACCA because the state reform law sets the sentence for Hammons'
past felonies below the ten-year requirement of the statute.
ACCA "leaves the standard by which to judge the seriousness of a
state drug conviction to the policy of the state." United States
v. Morton, 17 F.3d 911, 915 (6th Cir. 1994) (holding that ACCA
did not apply where the state had lowered the maximum sentence
below ten years since the defendant's conviction).  Rather than
determining the seriousness of state felonies based on the length
of the actual sentence, amount of drugs or any other measure,
ACCA instead relies on the state's indication of the seriousness
of the crimes through its sentencing policies.  See 18 U.S.C.
§ 924(e)(2)(A)(ii).

In New York, these sentencing policies have been the subject
of a protracted and very public debate.  See New York v. Denton,
7 Misc. 3d 373, 2005 N.Y. Slip Op. 25029 (Sup. Ct. Kings County
2005) (collecting articles and public statements on New York's
sentencing policies for drug crimes).  This debate centered on
the Rockefeller drug laws, known by the gubernatorial

administration that passed them, which were applicable to
Hammons's 1994 state convictions.  As early as 2001, the present
governor called for their reform.  N.Y. Gov. Ann. Mess. (2001).
The sponsors of the bill described the Rockefeller drug laws as
providing "inordinately harsh punishment for low level non-
violent drug offenders" as well as misdirecting public funds for
the incarceration of these offenders.  New York Sponsors
Memorandum, Ch. 738 (2004).  Ultimately, in 2004, these laws were
amended, lowering the maximum sentence to five and one-half years
for Class C felonies, the same class of felony for which Hammons
was convicted in 1994.  2004 N.Y. Laws Ch. 738.

In the instant matter, the government has argued that United
States v. Morton should not apply in this case because, unlike
the Tennessee statute analyzed in Morton, the Rockefeller Reform
Act is not retroactive and if Hammons were sentenced today for
his state crimes, the maximum sentence would still be over ten
years.  Morton did not discuss the retroactivity of the statute,
instead relying on the shift in state policy rather than the
actual sentence applicable to the defendant.  Morton, 17 F.3d at
915.  However, other circuits have distinguished Morton on the
basis of Tennessee's retroactivity provisions and applied ACCA
despite their states' new ameliorative provisions because those
provisions were not retroactive.  See United States v. Davis, 108
Fed. Appx. 131 (5th Cir. 2004) (applying ACCA where the state

supreme court determined that the state law should not be applied retroactively); United States v. Williams, 57 Fed. Appx. 553 (4th Cir. 2003) (applying ACCA despite amendments to the state sentencing structure because of the state law was not retroactive); United States v. Hinojosa, 349 F.3d 200 (5th Cir. 2003) (applying ACCA where the state's ameliorative amendments to the sentencing structure were not retroactive). The government relies on these cases to argue that ACCA should apply here because the New York law is not retroactive either. In my view, the results reached in those cases are not correct.

First, contrary to the government's argument, it is not at all clear that Hammons would be subject, in state court today, to a maximum sentence of over ten years for crimes of which he was convicted in 1994. New York State jurisprudence has a strong presumption of making ameliorative provisions retroactive. See People v. Behlog, 74 N.Y.2d 237, 543 N.E.2d 69, 544 N.Y.S.2d 804 (1989). The New York State courts have come to different determinations as to whether the ameliorative sections of the Rockefeller Reform Act should be retroactive; the issue is currently before the New York Court of Appeals. People v. Nelson, 21 A.D.3d 861, 804 N.Y.S.2d 1 (1st Dep't 2005) (holding that the ameliorative provisions did not apply retroactively), leave to appeal granted, 6 N.Y.3d 757, 843 N.E.2d 1165, 810 N.Y.S.2d 425 (2005); compare People v. Denton, 7 Misc. 3d 373,

374, 793 N.Y.S.2d 886, 887 (Sup. Ct. Kings County 2005) (holding that the on-or-after effective date applicability provision was intended to avoid ex post facto problems as to other provisions of the amendment that enhanced some sentences, not to preclude retroactive application of the ameliorative provisions).  Unlike in Williams, Davis, and Hinojosa, there is no certainty here that Hammons would receive the higher sentence.

Furthermore, even if the Rockefeller Reform Act is ultimately held to be not retroactive, the State has in fact made its new policy of lowering sentences retroactive for many sentenced defendants through other means.  Thus, while only a limited class of defendants convicted and sentenced for a class A-I felony offense were given the opportunity to go before their sentencing judge for a new sentence,  2004 N.Y. Laws Ch. 738, § 23, prisoners convicted and sentenced for other class A, B and C felony offenses were granted expanded opportunities to qualify for "merit time allowances" which substantially shortened their sentences (in some cases by as much as one-third).  2004 N.Y. Laws Ch. 738, § 7, 8, 30.  Thus, even if the statute is not explicitly retroactive, many if not all those sentenced for crimes prior to the effective date of the statute have access to ameliorative provisions, albeit not a resentencing.

Moreover, the State may have had policy reasons for offering new sentences for those who faced the harshest punishment and

providing only ameliorative provisions for the rest in the form
of "merit time allowances."  The class A-1 felonies were the ones
where the sentences were most severe and may have been viewed as
the ones in most need of immediate relief.  <u>See</u> <u>People v. Pauly</u>,
21 A.D.3d 595, 799 N.Y.S.2d 841 (3d Dep't 2005) (finding a
rational basis for distinguishing between different classes of
felonies).  Were the statute made fully retroactive to all
classes of felonies, implementing this provision to possibly
thousands of cases would be an enormous burden on the state court
system.  Nevertheless, either method, resentencing or sentence
reductions, would have the same effect:  carrying out the State's
decision to lower the sentences served.

Regardless of the State's method of implementing its changed
policy in the drug area, it has determined that the severe
penalties for drug crimes under the Rockefeller drug laws were
not warranted.  The statute amending the Rockefeller drug laws
rejects the severity of the sentences overall.  By lowering the
sentences in certain instances and providing other forms of
amelioration, the State brought already pronounced sentences more
in line with its present view of the seriousness of the crimes.
This policy decision by the State – not the mechanical result of
applying the current sentencing structure to Hammons' past crimes
– is what should determine, for federal law purposes, whether
ACCA should apply.  <u>Morton</u>, 17 F.3d at 915.  It is the State's

present policy ACCA seeks to implement and, therefore, that
should control, especially, as discussed below, when this
interpretation of ACCA accords with its plain language.  See
Morton, 17 F.3d at 915 ("[B]y looking at state sentencing law,
[ACCA] leaves the standard by which to judge the seriousness of a
state drug conviction to the policy of the state.").  Where, as
here, the State has indicated an overall rejection of the
sentence structure in place at the time of the state conviction,
this rejection must be considered when evaluating whether the
crime is to be seen as a predicate for ACCA purposes.

     As indicated, considering the current, rather than the
former state sentence, comports with a plain reading of ACCA.
ACCA only applies when "a maximum term of imprisonment of ten
years or more is prescribed by law[.]"  18 U.S.C.
§ 924(e)(2)(A)(ii) (emphasis added).  The present tense of the
verb "is" denotes that the current sentencing structure is
relevant, rather than the sentence that was prescribed by law at
the time of the earlier crime.

     Alternatively, if, as the government has argued, the word
"is" in this context actually refers to the former sentencing
structure, then the government has identified an ambiguity in the
statute because the other reading seems clear and certainly
equally reasonable.  When a sentencing statute is ambiguous, the
interpretation most favorable to a criminal defendant should

apply. <u>United States v. Simpson</u>, 319 F.3d 81 (2d Cir. 2003)

(applying the rule of lenity to the sentencing guidelines); <u>see</u>

<u>also</u> <u>United States v. Pabon-Cruz</u>, 391 F.3d 86, 102, n.19 (2d Cir.

2004) ("[W]e would hesitate to adopt the Government's position

that an ambiguous penalty provision should be construed on the

basis of [legislative history] against a criminal defendant."),

<u>citing</u> <u>United States v. R.L.C.</u>, 503 U.S. 291, 305 (1992) ("We do

not think any ambiguity survives.  If any did, however, we would

choose the construction yielding the shorter sentence by resting

on the venerable rule of lenity rooted in the instinctive

distaste against men languishing in prison unless the lawmaker

has clearly said they should.").  "The rule of lenity states that

a court cannot interpret a federal criminal statute so as to

increase the penalty that it places on an individual when such an

interpretation can be based on no more than a guess as to what

Congress intended." <u>Simpson</u>, 319 F.3d at 86 (citation and

quotations omitted).  Since, if any ambiguity exists, it should

be resolved in favor of the defendant, Hammons' state law

convictions are not predicate convictions for ACCA purposes.


**(3)**

Hammons has urged that the maximum state sentence at the

time of the alleged federal crime should apply because factors

that enhance a sentence are to be determined by a jury.  <u>United</u>

10

States v. Gonzalez, 420 F.3d 111 (2d Cir. 2005). However, the Second Circuit has held in similar situations that the use of prior convictions for sentence enhancement is excepted from this general rule. United States v. Snype, 441 F.3d 119, 148 (2d Cir. 2006) (citing Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)). Since the outcome in this case would be the same, regardless of whether the time frame is set at the time of the federal crime or at sentencing for the federal crime, and since Morton considered the maximum sentence at the time of the federal sentencing, Morton, 17 F.3d at 915, there is no need to reach this issue.

## Conclusion

Because Hammons' state law convictions do not have the requisite maximum sentence to trigger ACCA, the statute's sentence enhancements do not apply.

Dated: Brooklyn, New York
      July 18, 2006

SO ORDERED:


          /s/
David G. Trager
United States District Judge